**UNITED STATES of America**

**v.**

**Jose LEMUS–ALVARADO, Defendant**

**No. CR. 01–60–P–C.**

United States District Court, D. Maine.

Oct. 29, 2001.

Neal K. Stillman, Portland, ME, for Jose Lemus–Alvarado, defendants.

Helene Kazanjian, Esq., Office of the U.S. Attorney, Portland, ME, for U.S. Attorneys.

**MEMORANDUM OF DECISION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS**

GENE CARTER, District Judge.

The Court now has before it Defendant's Motion to Suppress, in which he seeks suppression of all statements made by Defendant and evidence obtained by police and government agents on or after July 2, 2001. Docket No. 10. The Government opposes the motion. Docket No. 11. The Court will deny Defendant's Motion to Suppress.

**I. FACTS**

On July 2, 2001, Judy Levasseur, an employee of the Maine Bureau of Motor Vehicles on Canco Road in Portland, Maine ("Motor Vehicles"), questioned the authenticity of two documents—a social security card and a resident alien card—presented to her by a customer seeking a Maine Identification Card. Ms. Levasseur asked her supervisor, Jennifer Pease, to look at the documents presented by Jose Lemus–Alvarado. With the assistance of a magnifying glass, Ms. Pease looked at the documents, particularly the photo on the resident alien card that she thought looked "strange." Ms. Pease called Special Agent Paul Melican at the South Portland office of the Immigration and Naturalization Service ("INS") and explained the situation to

him. Ms. Pease then checked the number on the social security card with the Social Security Administration, and the card number came back as invalid. With Agent Melican then on his way to the Motor Vehicles, Ms. Levasseur attempted to keep Defendant at Motor Vehicles until Agent Melican arrived by taking Defendant's photo a couple of times. Defendant left the building after the second photo was taken, but, after engaging in some small talk with Ms. Pease outside, he returned into the building.

Agent Melican arrived at Motor Vehicles sometime between 4:30 and 5:00 in plain clothes. Upon his arrival, Ms. Pease gave Agent Melican the documents previously presented by Defendant. Ms. Pease then pointed out an individual sitting in the waiting area and explained that he had presented the two identification documents that she believed were not legitimate. It was immediately clear to Agent Melican that the alien registration receipt card was fraudulent because the photograph had been pasted on in an unauthorized manner. Agent Melican approached the individual whom Ms. Pease had identified as Mr. Lemus–Alvarado and, speaking in English and Spanish, asked him if the two documents belonged to him. Mr. Lemus–Alvarado acknowledged that the documents were his. Agent Melican then asked Mr. Lemus–Alvarado his name and date of birth. He identified himself as Jose Lemus–Alvarado and said that his date of birth was April 20, 1980. Agent Melican identified himself as an INS agent and told Mr. Lemus–Alvarado that the alien registration card was counterfeit. Agent Melican inquired about how Mr. Lemus–Alvarado obtained the documents. Mr. Lemus–Alvarado admitted that he purchased the documents in California. After further questioning, Mr. Lemus–Alvarado told Agent Melican that he was from Honduras and admitted that he en-tered the United States illegally in January 2000 by crossing the border from Mexico to Texas. Agent Melican arrested Mr. Lemus–Alvarado and transported him to the Cumberland County Jail ("CCJ") where he was detained overnight.

The next day, Agent Melican's check of the INS central index revealed that the number on the alien registration card given by Mr. Lemus–Alvarado was invalid. After determining that the Office of the United States Attorney for the District of Maine would handle the case, Agent Melican went to the CCJ and advised Mr. Lemus–Alvarado of his *Miranda* rights. Thereafter, Mr. Lemus–Alvarado agreed to waive his rights and speak to Agent Melican. Agent Melican asked Mr. Lemus–Alvarado his parents' names and other biographical information.

## II.  DISCUSSION

Defendant asserts that the statements he made to Agent Melican on July 2, 2001, before he was arrested, must be suppressed because the agent conducted custodial interrogation without first administering warnings as prescribed by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Specifically, Defendant asserts that *Miranda* warnings should have been given because, after examining those documents, Agent Melican had probable cause to arrest the Defendant for presentation of false documents and he was not free to leave. The Government concedes that the questions posed by the INS agent constitute interrogation, but objects to the assertion that Defendant was "in custody" for purposes of the *Miranda* inquiry.

On this record, the Court concludes that Defendant was not in custody at any time prior to his arrest by Agent Melican at Motor Vehicles. Although it was late in

the business day, with few customers at Motor Vehicles and employees of Motor Vehicles had attempted to keep Defendant in the building by telling him that the photo was not processing properly, Defendant was never instructed that he was prohibited from leaving Motor Vehicles. Indeed, after Ms. Levasseur took a second photograph of Defendant, he left the building and then returned after some discussion with Ms. Pease about the authenticity of the documents he presented.

When Agent Melican questioned Defendant, they were standing by the information booth adjacent to the waiting area and only a few feet from the front entrance. Agent Melican identified himself as an INS agent prior to questioning Defendant, but did not display his gun. Defendant was closer to the entrance than to Agent Melican and never indicated that he wanted to leave. Defendant was arrested within ten minutes of Agent Melican's arrival at Motor Vehicles. Although Motor Vehicles was scheduled to close at 5:00, the testimony did not indicate that the office closed at any time prior to Defendant's arrest. Under these circumstances, the Court finds that Defendant was not in custody when Agent Melican was interrogating him. Therefore, the Court will deny Defendant's request to suppress the statements he made to Agent Melican at Motor Vehicles prior to his arrest.

Although taken into custody at Motor Vehicles, Defendant was not given *Miranda* warnings until sometime the next day. Nevertheless, there was no evidence presented at the hearing that Defendant made any post-arrest pre-*Miranda* statements. In addition, Defendant has moved to suppress physical evidence seized by law enforcement officers. The record reveals that there was no evidence obtained from Defendant after he encountered Agent Melican. The only physical evidence involved in the case—the two identification documents—were voluntarily turned over by Defendant to employees of Motor Vehicles prior to Agent Melican's arrival. Therefore, the Court will deny Defendant's motion to suppress evidence gathered as a result of Defendant's interrogation by Agent Melican.

### III. CONCLUSION

Accordingly, the Court **ORDERS** that Defendant's Motion to Suppress be, and it is hereby, **DENIED.**